IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES F. FOOTE,

    Plaintiff,

v.

JOHN POLK, et al.,

    Defendants.

OPINION & ORDER

Case No. 16-cv-641-wmc

---

Plaintiff James F. Foote is proceeding in this lawsuit against defendants John Polk and Polk Meat Products on various state law claims arising out of his biting into a sausage containing a piece of metal.[1] Currently before the court are the parties' cross motions for summary judgment, with plaintiff seeking judgment in his favor on all claims and defendants seeking judgment with respect to plaintiff's common law negligence and strict liability claims. (Dkt. ##46, 54.) For the reasons that follow, the court will deny plaintiff's motion and grant defendants' motion as to plaintiff's negligence and strict liability claims. Furthermore, while defendants did not move for summary judgment on plaintiff's remaining implied warranty of merchantability claim, the evidence of record appears to foreclose that claim as well. Accordingly, under Federal Rule of Civil Procedure 56(f), the court will direct plaintiff to show cause as to why summary judgment should not be granted in defendants' favor on that remaining claim.

---

[1] Although initially identified in the caption as "James A. Polk" and "Polk's Meat Products," defendants represent that "John A. Polk" should just read "John Polk" and "Polk's Meat Products, Inc." Accordingly, the court will use the latter names and directs the clerk of court to alter the caption in this case accordingly.

1

## UNDISPUTED FACTS[2]

**I.     Parties**

James Foote is currently incarcerated at Stanley Correctional Institution ("Stanley), where the event giving rise to his claims allegedly took place. Foote is a citizen of Minnesota. Defendant Polk Meat Products, Inc., is the manufacturer of the meat product called "Cajun Sausage Links." Defendant John Polk owns Polk Meat Products. Both defendants are citizens of Mississippi.[3]

Polk Meat Products packages Cajun Sausage Links loose in a 24x24 plastic liner, then boxes them, 50 links per box. Since 2000, Polk Meat Products has run its boxed up produce through a metal detector. While Polk Meat Products has been informed that its product has on occasion contained rubber and a piece of paper from trimmings, there is no evidence that the metal detector has ever gone off when scanning packages of Cajun Sausage Links, nor is there evidence that Polk Meat Products was aware of any instance where metal has been found in one of its meat products.

---

[2] Unless otherwise noted, the following facts are materials and undisputed. The court has drawn these facts from the parties' proposed findings of facts and the cited evidence of record, as appropriate.

[3] The court previously required Foote to amend his complaint to include more specific allegations about his citizenship, and then the court accepted, based on his representation that his permanent residence is in Minnesota, that he is domiciled in that state. (*See* 8/18/2017 Order (dkt. #13) at 2-3.) Also, the court previously accepted that Polk and Polk Meat Products are citizens of Mississippi, on the basis that Foote alleged in his complaint that (1) Polk resides in Mississippi and (2) Polk Meat Products is incorporated and has its principal office in Mississippi. (*Id.*) Since defendants admitted to Foote's representations (*see also* Def's Answer (dkt. #20) 1-2), and the court sees no basis to conclude otherwise, the court has accepted both defendants to be citizens of Mississippi.

## II. Stanley Food Service Procedures

At Stanley, when food trucks arrive, inmates unload the boxes containing the sausage links and place the boxes in the freezers inside the prison kitchen. Two days before the sausage is to be cooked for a meal, inmates working in the kitchen pull the sausages out of the freezer and place them in a refrigerator to thaw. On the day the sausages are to be served, inmates take the sausages out of the cooler, count them, and place them individually onto several pans for heating. The pans are placed into ovens or steamers for the inmates to heat. After the heating process is complete, an inmate pulls them out of the oven and places them in "hot boxes." These hot boxes are wheeled out to inmates who remove the sausages, put them in the serving line, and then place individual sausages onto a tray for other inmates to take.

## III. Foote's Injury

On May 13, 2016, while at Stanley, Foote was served a Cajun Sausage Link on his meal tray. While eating it, he bit into a piece of metal. The metal cut his gums and caused him to spit blood.[4] It also broke his tooth. Foote does not remember what the metal object looked like, nor how it was shaped. Instead, Foote avers that he took the piece

---

[4] Foote submits his own affidavit and those of two other prisoners, Ervin Schad and Johnnie Littlefield, both of whom attest to having witnessed this event. (Dkt. ##42, 43.) Defendants contend that the court should not consider those affidavits because they were not notarized, and thus, they do not meet the requirements for an affidavit. However, the documents were dated and signed by Schad and Littlefield, with each swearing to the veracity of their statements under penalty of perjury. That is all that is required for consideration under 28 U.S.C. § 1746. *See Owens v. Hinsley*, 635 F.3d 950, 954-55 (7th Cir. 2011) (listing cases holding that "a declaration under § 1746 is equivalent to an affidavit for purposes of summary judgment").

of metal on a tray to Correctional Officer Cody Kremstreiter. Like Foote, Officer Kremstreiter does not recall the shape of the piece of metal, only that it was silver and the size of a pea. Kremstreiter then passed the piece of metal to Stanley's food service leader, and the piece of metal has since been either lost or thrown away. Foote later received emergency medical treatment, and his tooth was removed.[5]

OPINION

Plaintiff is proceeding on claims of negligence, strict liability and breach of the implied warranty of merchantability. Summary judgment is appropriate if the moving party establishes that: (1) "there is no genuine dispute as to any material fact"; and (2) it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, summary judgment is not appropriate unless "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Plaintiff moves for judgment in his favor on all three of his claims. While defendants also purport to move for judgment on all of plaintiff's claims, their initial brief only refers to plaintiff's negligence claim (Def. Br. (dkt. #49)), and they only address strict liability in response to plaintiff's motion (Def. Opp'n Br. (dkt. #62.)). Since the evidence of record would not permit a reasonable jury to find in plaintiff's favor under either theory

---

[5] Foote also submits Exhibits A and B, which he claims are his medical and psychological records from the Department of Corrections. While the court infers that Foote submitted these materials to prove the nature of his injuries, Foote does not include any proposed findings of fact related to those records. Regardless, defendants do not deny Foote was injured on May 13, 2016.

4

of relief, and plaintiff responded with respect to both claims, defendants are entitled to judgment as a matter of law on the negligence and strict liability claims. While judgment in defendants' favor also appears appropriate on plaintiff's implied warranty of merchantability claim, since plaintiff has not had the opportunity to argue in opposition to judgment on this claim and defendants did not move for it, the court will give plaintiff the chance to oppose judgment in defendants' favor on this claim.[6]

To prevail on a claim for negligence under Wisconsin common law, a plaintiff must prove that the defendants breached their duty of care and plaintiff suffered injury as a result. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865. Alternatively, to prevail on a common law claim for strict liability or *res ipsu loquiter*, a plaintiff must show that he was injured by a product that was in a defective condition unreasonably dangerous to the user or consumer at the time it left the seller's custody. *State Farm Mut. Automobile Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 319, 592 N.W.2d 201, 207(1999); *Dippel v. Sciano*, 37 Wis. 2d 443, 460, 155 N.W.2d 55 (1967).

Here, defendants submitted evidence showing that since 2000, they have used metal detectors to scan their meat products. While there may have been instances in which the meat products contained rubber or paper, defendants have no record of their meat containing metal. More importantly, plaintiff has produced *zero* evidence suggesting that the piece of metal that he bit into was present in the Cajun Sausage Link as a result of either defendants' negligence, or that the metal was even present in the link when it left

---

[6] Frankly, the court conceives of no basis for liability as to John Polk, since the only claims Foote brings would be against the separately incorporated Polk Meats. As defendant does not move on that basis, however, the court has not differentiated between them.

the Polk Meat Products. Indeed, plaintiff does not dispute that the process by which Stanley inmates handle, prepare and serve the sausages allows for numerous opportunities for Stanley inmates and/or employees to handle and tamper with the sausage links. Absent *some* evidence of negligence or control by defendants until the sausage link was given to plaintiff, no reasonable jury could infer that the sausage was unfit for human consumption when it left defendants' control.

In contrast, plaintiff maintains that it would be reasonable to infer that the metal was *inside* the sausage when it left defendants' facility. That theory implicates the doctrine of *res ipsa loquitor*, but defendants correctly point out that this doctrine would only be available if: (1) the incident were the "kind which does not ordinarily occur in the absence of someone's negligence"; and (2) defendants were in exclusive control of the sausages until it reached plaintiff. *Turtenwald v. Aetna Cas. & Surety Co.*, 55 Wis. 2d 659, 665, 201 N.W.2d 1 (1972) ("the agency of instrumentality causing the harm must have been within the exclusive control of the defendant").

Here, the record establishes that defendants simply did not have exclusive control over the sausage before plaintiff received it. Even assuming that defendants retained exclusive control over the sausages until Stanley inmates started handling them, plaintiff does not dispute that there were *several* intervening events between when inmates began unpackaging and handling the sausages and his May 13 injury. To summarize, when food deliveries arrive at Stanley, inmates unload the boxes and move them to freezers, then inmates move them again to refrigerators and eventually handle them for heating and serving. While the sausage may remain packaged until heated and served, inmates are also

6

responsible for unwrapping, preparing and serving the sausages individually. Given that there is no evidence Stanley deviated from these procedures when the Cajun Sausage Links arrived, the court must accept that inmates handled unwrapped sausages before they reached plaintiff's tray. As such, plaintiff does not get the benefit of recovery under a theory of *res ipsa loquitor*. *See Turtenwald*, 55 Wis. 2d at 665.

Alternatively, to prove his common law negligence claim, plaintiff was bound to put forth actual evidence that defendants breached a duty of care or that the metal was inside the sausage link when it left defendants' control, which he has failed to do.

One issue remains. Defendants failed to move for summary judgment specifically with respect to plaintiff's claim for violation of the implied warranty of merchantability, although it is unclear why since the evidence of record does not appear to support such a claim. Indeed, to survive summary judgment, plaintiff would need to submit proof, as an initial matter, that he is in privity of contract with defendants. *Lamont v. Winnebago Indus., Inc.*, 569 F. Supp. 2d 806, 815-16 (E.D. Wis. 2008) (recognizing that Wisconsin has declined to recognize an implied warranty of merchantability in the absence of privity between the parties) (citing *Dippel*, 37 Wis. 2d at 452-58, 155 N.W.2d 55). Assuming plaintiff could clear that hurdle, he would also need to submit proof that the product he consumed was unfit for human consumption. *See Betehia v. Cape Cod Corp.*, 10 Wis. 2d 323, 326-28, 103 N.W.2d 64, 66-67 (1960).

While plaintiff cites to this standard in his brief, wholly absent from the evidence of record is any indication that plaintiff purchased the sausage from defendants. Indeed, plaintiff was a prisoner at Stanley when he received the food from the cafeteria, so the

7

court infers that the Wisconsin Department of Corrections was the actual buyer. Moreover, plaintiff has submitted no evidence suggesting that the sausage plaintiff was eating actually contained a piece of metal when defendants manufactured it. As such, it appears a foregone conclusion that this claim fails as a matter of law.

However, since defendants failed to move for judgment with respect to this claim specifically, the court must give plaintiff notice and the opportunity to object before finding for defendants on this claim. *See* Fed. R. Civ. P. 56(f).

ORDER

IT IS ORDERED that:

1. Defendants John A. Polk and Polk Meat Production's motion for summary judgment (dkt. #46) is GRANTED.

2. Plaintiff James F. Foote's motion for summary judgment (dkt. #54) is DENIED.

3. Plaintiff has until **January 30, 2019**, to submit proposed findings of fact, supporting evidence and argument as to why the court should not also find in defendants' favor on his implied warranty of merchantability claim.

4. The trial schedule is STRICKEN, to be reset only if the court determines that plaintiff's implied warranty of merchantability claim requires a trial.

Entered this 9th day of January, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

8